IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

FILED
JUL 27 2005
ARLEN B. COYLE, CLERK
By /s/ Deputy

ELLIOTT GUNTHARP, by and through
his brother, Kent Guntharp,                                                                    Plaintiffs

VERSUS                                                          CIVIL ACTION NO: 1:05CV177-D-D

ITAWAMBA COUNTY SHERIFF'S DEPARTMENT
and ITAWAMBA COUNTY, MISSISSIPPI,                                                              Defendants

JURY TRIAL DEMANDED

**COMPLAINT**

This is an action to recover actual damages for violation of the First, Fourth and Fourteenth Amendments to the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's state law claims.[1] The following facts support the action:

1.

Plaintiff, ELLIOTT LEE GUNTHARP, is an adult resident citizen of 102 Buena Vista Drive, Fulton, Mississippi 38843.

2.

Defendant, ITAWAMBA COUNTY SHERIFF'S DEPARTMENT, is a political subdivision of the State of Mississippi. Defendant may be served with process upon its Sheriff,

---

[1] On March 28, 2005, Plaintiff filed a Notice of Claim, asserting negligence under the Mississippi Tort Claims Act. (Exhibit "A") On April 28, 2005 Defendant denied the factual allegations in the Notice of Claim and denied any legal liability. (Exhibit "B")

Phillip K. Crane, at 201 South Cummings Street, Fulton, Mississippi 38843.

Defendant, ITAWAMBA COUNTY, MISSISSIPPI, is a political subdivision of the State of Mississippi. Defendant may be served with process upon James E. Witt, the Chancery Clerk of Itawamba County, at 201 W. Main Street, Fulton, Mississippi 38843. It is sued for injunctive relief for the administrative acts of its chancery clerk and for acts of its board of supervisors.

3.

This Court has civil rights jurisdiction under 28 U.S.C. § 1343, and federal question jurisdiction under 28 U.S.C. § 1331, and 28 U.S.C. § 1983. This Court has supplemental jurisdiction for Plaintiff's state law claim.

4.

Plaintiff, Elliott Guntharp, who is forty-four years old, joined the military at the age of eighteen years old. In 1985, while still in the military, Plaintiff was diagnosed with bi-polar disorder. Plaintiff received a medical discharge and has been under the care of the Veterans' Administration since that time. The VA attempted to send Plaintiff to school and to work, but he was unable to cope with the stress associated with those endeavors and was eventually declared totally disabled because of the bi-polar disorder. From around 1986 to the present, except for a brief time in 1991, Plaintiff has been able to live outside of a mental facility, living with his parents, with the outpatient care provided by the VA.

5.078

5.

In or about, 1991, Plaintiff was involuntarily committed by his father, Travis Guntharp, because Plaintiff needed the extra treatment that was only available at the VA hospital. Plaintiff was processed immediately and was transported to the VA Hospital in Jackson by the Chief of Police, Ray Barrett, the same day his commitment papers were signed.

6.

Later, in or about, 1991, Plaintiff voluntarily committed himself to the VA's mental health division because he again needed extra attention of inpatient care to deal with his bi-polar disorder, beyond what the VA could provide on an outpatient basis while Plaintiff was living with his parents.

7.

In 1992, Travis Guntharp, passed away and Plaintiff's mother, Phyllis Guntharp, replaced her husband as the person having power of attorney over Plaintiff's affairs. Plaintiff was able to function while living with his mother, on an outpatient basis, from that time until 2004.

8.

On April 1, 2004, Plaintiff's bi-polar condition suddenly took a turn for the worse. Plaintiff began acting paranoid, obsessive and hostile toward family members. Plaintiff's mother tried to convince Plaintiff that he needed to voluntarily commit himself to the VA hospital for treatment, but was unable to do so.

9.

On or about April 1, 2004, having no other option, and not being able to control Plaintiff's erratic behavior, Plaintiff's mother petitioned for Plaintiff to be involuntarily committed for treatment. The plan was to have Plaintiff picked up on April 2, 2004, only hours before being evaluated by a mental health physician pursuant to a commitment procedure. However, Plaintiff became uncontrollable on April 1, 2004, and because Plaintiff's family had signed an affidavit of poverty, Plaintiff was transported to the Itawamba County Jail.

10.

Elliott Guntharp stayed in the Itawamba County jail for seven days. During this time, he was traumatized by the inmates in the jail and by the staff. Specifically:

1. Elliott Guntharp's family tried to see him every day, but they were not allowed to do so by jail personnel;

2. Elliott Guntharp asked repeatedly to see his pastor; however, jail personnel unreasonably refused to contact his pastor, Brother Dewitt Bain, of the East Fulton Baptist Church;

3. Elliott Guntharp must take his bipolar medications twice daily; however, during this week, Guntharp only received his medicine two times, and was otherwise not provided appropriate medical care;

4. Elliott Guntharp was hit with a stun gun by the Jail Administrator even though he was behind bars;

5. Jail employees did not adequately supervise inmates to prevent them from abusing Elliott Guntharp , and he was drenched with water from inmates and was forced to sleep, wearing wet clothes in a cold cell;

6. Elliott Guntharp had urine thrown on him from an inmate in an adjoining cell; Guntharp only received one bath within the week;

7. The conditions of his confinement were inhumane and, in some instances, constituted torture;

8. Elliott Guntharp was infested with venereal crabs because he was forced to sleep on dirty sheets;

9. Elliott Guntharp's mother brought money, food, hygiene products and clothing for his use; however, he never received any of these items;

10. Upon information and belief, employees working at the jail had no training in dealing with the special needs of persons who are involuntarily committed for treatment at a mental health facility, were not trained sufficiently to prevent abuse by both jailers and inmates and were not supervised sufficiently to prevent abuse by both jailers and inmates; and

11. Elliott Guntharp was not segregated from the criminal population.

11.

Plaintiff was not allowed to see his family until his court date, on or about, April 7, 2004. The next day at Noon after commitment papers where signed, Plaintiff's family took Plaintiff home, cleaned him up, and transported him to the VA Hospital in Jackson. Plaintiff was so traumatized by the abuse and neglect he received in the Itawamba County Jail that the VA hospital had to put Plaintiff in a padded cell in the secure area of the hospital. Plaintiff had to stay at the VA hospital for around six weeks before he could be released on an outpatient basis again.

12.

Defendants Itawamba County and the Itawamba County Sheriff's Department are liable to Plaintiff for the following causes of action:

1. Violation of free exercise of religion, and free association, protected by the First

Amendment;

2. Unreasonable force in violation of the Fourth Amendment;

3. Failure to dispense medicine intentionally ignoring Plaintiff's serious medical need in violation of the Fourteenth Amendment;

4. Failure to provide treatment for Plaintiff's serious mental illness and provide basis hygiene products brought by his mother, in violation of the Fourteenth Amendment;

5. Failure to provide minimally trained staff to deal with Plaintiff's serious medical condition, in violation of the Fourteenth Amendment;

6. Failure to segregate Plaintiff from the criminal population, in violation of the Fourteenth Amendment;

7. Negligent training and supervision of staff, allowing inmates and staff to abuse Plaintiff, and;

8. Negligent lack of protection for Plaintiff, allowing him to be traumatized by the cruel and inhume conditions at the jail;

9. Punishing Plaintiff although he committed no crime in violation of the Fourteenth Amendment;

10. Committing Plaintiff to jail because his family signed an affidavit of poverty in violation of the equal protection clause of the Fourteenth Amendment; and

11. Plaintiff was committed to jail only because Itawamba County authorities had his family sign an affidavit of poverty. Absent this affidavit of poverty, he would have been sent to a mental institution or to the Veteran's Hospital. Arbitrarily sending Plaintiff to jail instead of a mental institution or to the Veteran's Hospital, without considering the alternatives of a hospital, such as the Veteran's Hospital, represents arbitrary governmental action in violation of the due process clause of the Fourteenth Amendment and also violations Mississippi state law.

## PRAYER

Plaintiff has suffered mental anxiety and stress as a result of Defendants' actions.

Plaintiff prays for actual damages in an amount to be determined by a jury.

                         Respectfully submitted,

                         WAIDE & ASSOCIATES, P.A.

                         BY: _____
                               JIM WAIDE
                               MS BAR NO: 6857

WAIDE & ASSOCIATES, P.A.
ATTORNEYS AT LAW
POST OFFICE BOX 1357
TUPELO, MS 38802
TELEPHONE: 662/842-7324
FACSIMILE: 662/842-8056
EMAIL: WAIDE@WAIDELAW.COM

Attorneys for Plaintiff

5.078

BEFORE THE BOARD OF SUPERVISORS OF ITAWAMBA COUNTY, MISSISSIPPI AND THE SHERIFF PHILLIP CRANE, IN HIS OFFICIAL CAPACITY, AS SHERIFF OF ITAWAMBA COUNTY, MISSISSIPPI

## NOTICE OF CLAIM

Pursuant to Miss. Code Ann. § 11-46-1 et seq., notice is hereby given of a claim for damages by Elliott Guntharp, an adult resident citizen of 102 Buena Vista Drive, Fulton, Mississippi 38843, for acts committed by jailers, in the course and scope of their employment with the Itawamba County Jail.

Elliott Guntharp has suffered from bipolar disorder since 1985, and has been involuntarily committed on at least one occasion to the VA Hospital in Jackson, Mississippi.

On April 1, 2004, Elliott's bipolar condition suddenly took a turn for the worse. Mr. Guntharp began acting paranoid, obsessive and hostile toward family members. Guntharp's mother tried to convince Guntharp that he needed to voluntarily commit himself to the VA hospital for treatment, but was unable to do so.

On or about April 1, 2004, having no other option, and not being able to control Guntharp's erratic behavior, Guntharp's mother signed papers to have him involuntarily committed for treatment. The plan was to have Guntharp picked up on April 2, 2004, only hours before being evaluated by a mental health physician pursuant to the a commitment procedure. However, Guntharp became uncontrollable on April 1, 2004 and he was picked up and taken to the Itawamba County Jail.

Elliott Guntharp stayed in the Itawamba County jail for seven days. During this time, he was severely traumatized by the inmates in the jail and by the staff. Sheriff Phillip Crane and


EXHIBIT A

unknown deputies and/or jailers are responsible for the following:

1. Elliott Guntharp's family tried to see him every day, but they were not allowed to do so by jail personnel, including Jail Administrator, Kenneth Night;

2. Elliott Guntharp asked repeatedly to see his pastor; however, Respondents unreasonably refused to contact his pastor, Brother Dewitt Bain, of the East Fulton Baptist Church;

3. Elliott Guntharp must take his bipolar medications twice daily; however, during this week, Guntharp only received his medicine two times, and was otherwise not provided appropriate medical care;

4. Elliott Guntharp was hit with a stun gun by the Jail Administrator, Kenneth Night, even though he was behind bars and no threat to anyone;

5. Jail employees did not adequately supervise inmates to prevent them from abusing Elliott Guntharp, and he was drenched with water from inmates and was forced to sleep, wearing wet clothes in a cold cell;

6. Elliott Guntharp had urine thrown on him from an inmate in an adjoining cell; Guntharp only received one bath within the week;

7. The conditions of his confinement were inhumane and, in some instances, constituted torture;

8. Elliott Guntharp was infested with venereal crabs because he was forced to sleep on dirty sheets;

9. Elliott Guntharp's mother brought money, food, hygiene products and clothing for his use; however, he never received any of these items;

10. Upon information and belief, employees working at the jail had no training in dealing with the special needs of persons who are involuntarily committed for treatment at a mental health facility, were not trained sufficiently to prevent abuse by both jailers and inmates and were not supervised sufficiently to prevent abuse by both jailers and inmates; and

11. Elliott Guntharp was not adequately segregated from the criminal population.

Elliott Guntharp was not allowed to see his family until his court date, which was on

or about April 7, 2004. The next day at noon, after commitment papers where signed, Elliott' Guntharp's family took him home, cleaned him up and transported him to the VA Hospital in Jackson. Elliott Guntharp was so traumatized by the abuse and neglect he received in the Itawamba County Jail that the VA hospital had to put him in a padded cell in the secure area of the hospital. Guntharp had to stay at the VA hospital for around six weeks before he could be released on an outpatient basis again. Guntharp suffered severe physical pain and emotional suffering and his stay as the VA was extended because of the trauma he suffered.

Elliott Guntharp prays for damages in the amount of $500,000.00.

Witnesses to the incident include:

1. Jailers and/or Deputies of the Itawamba County Jail, names and addresses unknown at this time, 201 South Cummings Street, Fulton, Mississippi 38843;

2. Sheriff Phillip K. Crane, 201 South Cummings Street, Fulton, Mississippi 38843;

3. Jail Administrator, Kenneth Knight, 201 South Cummings Street, Fulton, Mississippi 38843;

4. Elliott Guntharp, 102 Buena Vista Drive, Fulton, Mississippi 38843; and

5. Phyllis Guntharp, 102 Buena Vista Drive, Fulton, Mississippi 38843.

Dated this the 28th day of March, 2005.

Respectfully submitted,

WAIDE & ASSOCIATES, P.A.

BY: _____
JIM WAIDE
MS BAR NO.: 6857
RON L. WOODRUFF
MS BAR NO.: 100391

WAIDE & ASSOCIATES, P.A.
ATTORNEYS AT LAW
POST OFFICE BOX 1357
TUPELO, MS 38802
TELEPHONE: 662-842-7324
FACSIMILE: 662-842-8056
EMAIL: WAIDE@WAIDELAW.COM

Attorneys for Claimant

# BO RUSSELL, PLLC
## ATTORNEY AT LAW

**REPLY TO:**
209 COURT STREET
POST OFFICE BOX 28
TUPELO, MISSISSIPPI 38802-0028
(662)620-6367 PHONE • (662)620-6368 FAX

212 WEST MAIN
POST OFFICE BOX 187
FULTON, MISSISSIPPI 38843-0187
(662)862-4656 PHONE • (662)862-7159 FAX

April 28, 2005

## DENIAL OF NOTICE OF CLAIMS

Ron L. Woodruff, Esquire
Waide & Associates, P.A.
Post Office Box 1357
Tupelo, MS 38802-1357

    **RE:** Elliott Guntharp/Itawamba County, Mississippi

Dear Mr. Woodruff:

This letter is in response to a Notice of Claim of Elliott Guntharp directed to Itawamba County, Mississippi dated March 28, 2005. Itawamba County has received the Notice of Claim and the factual allegations and legal claims against Itawamba County Jail and Jailer, included in the Notice. Itawamba County denies the factual allegations in the Notice of Claim and denies legal liability for any of the claims included therein.

Sincerely,

*Bo Russell*
Bo Russell



EXHIBIT B