Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF MISSISSIPPI
 2                        EASTERN DIVISION

 3

    ELLIOTT GUNTHARP, BY AND THROUGH HIS
 4  BROTHER, KENT GUNTHARP               PLAINTIFF

 5  VS.                                 NO. 1:05CV177-D-A

 6  ITAWAMBA COUNTY SHERIFF'S DEPARTMENT
    AND ITAWAMBA COUNTY, MISSISSIPPI      DEFENDANTS

 7

 8

 9

    ************************************************************
10

                 DEPOSITION OF KENT GUNTHARP
11

    ************************************************************
12

13

14

             TAKEN AT THE INSTANCE OF THE DEFENDANTS
15          IN THE LAW OFFICES OF WAIDE & ASSOCIATES
            332 N. SPRING STREET, TUPELO, MISSISSIPPI
16         ON FEBRUARY 15, 2006, BEGINNING AT 11:20 A.M.

17

18

19                  APPEARANCES NOTED HEREIN

20

21

22

    Reported by:  KATHRYN H. BOYER, CSR #1349

23  _____

24                ADVANCED COURT REPORTING
                       P.O. BOX 761
25                 TUPELO, MS 38802-0761
                     (662) 690-1500
```



EXHIBIT "B"

Deposition of KENT GUNTHARP, taken on FEBRUARY 15, 2006

1    Q.   You mentioned the stress he was under, the personal

2    problems he was having.  Did you know whether he acted out or

3    was he agitated?  Did he yell?  How did that manifest itself

4    if you know?

5    A.   It was my understanding -- and, again, this is just

6    the information I got from my family -- that the

7    manifestation of this sickness or bipolar episode at that

8    time was that he was being very irresponsible, spending

9    money, just letting the house get in complete disarray,

10   acting just irrationally, talking irrationally, just being

11   real moody.  You know, that was my understanding and that's

12   the way I recall that he had gotten when he got sick.

13   Q.   Was he discharged from the Army?

14   A.   Yes.

15   Q.   How was he discharged?

16   A.   On the Section 8 for mental incapacitation or

17   whatever it is.

18   Q.   And is it your understanding that as soon as he was

19   discharged, did he live in Georgia for a while or did he come

20   straight back and live with your mother?

21   A.   As I recall, I agree with what he said.  I think

22   when he was diagnosed and they got him on medication, he

23   tried to carry on over in Georgia.

24   Q.   When he was living with Shin?

25   A.   Right.  But, apparently, ultimately that didn't

1      A.   I don't recall exactly, but specifically, I know

2  that I saw him when he locked Mother out of the house.

3      Q.   And there seems to be an understanding that that

4  date was April 1st, 2004.  Do you have any reason to disagree

5  with that?

6      A.   What day of the week would that have been?

7      Q.   Thursday.

8      A.   I suppose.

9      Q.   After your mother called and told you that Elliott

10 had locked her out of the house, what did you do?

11     A.   I went over there.

12     Q.   And when you got there, what did you see?

13     A.   He was in the house.  He was at the window.  Mother

14 was out in the carport and we called the police and the

15 officer from Fulton responded and eventually, he and I were

16 able to convince Elliott to let us in the house.  And so, we

17 went in the house to talk to him.

18     Q.   When you called the police, you called them on the

19 phone?

20     A.   Yes.

21     Q.   Did you go visit them?  Did you go visit the police

22 too?

23     A.   No.

24     Q.   You just called.

25     A.   I believe we just called and asked to send somebody

Deposition of KENT GUNTHARP, taken on FEBRUARY 15, 2006

Page 48

1    out.

2        Q.   Do you know who you spoke with?

3        A.   No.

4        Q.   Did you speak to Ray Barrett?

5        A.   I don't remember.

6        Q.   Did you speak to Jerry Holder?

7        A.   I didn't until he got there.  I spoke to him when

8    he pulled in the driveway.

9        Q.   So it's your testimony that you just don't remember

10   particularly who you talked to --

11       A.   No.

12       Q.   -- when you made the call.

13       A.   That's correct.

14       Q.   But it's your memory that it was a call rather than

15   you going to see them; is that --

16       A.   As I recall, yes.

17       Q.   And you've testified that Jerry Holder came to your

18   house in response to that call?

19       A.   Yes.

20       Q.   Did you know Jerry Holder prior to that day?

21       A.   No.

22       Q.   Didn't know him at all.

23       A.   No.

24       Q.   From the time Jerry Holder arrived, pick the story

25   up from there, what happened next?

Deposition of KENT GUNTHARP, taken on FEBRUARY 15, 2006

Page 50

1      A.    Pretty much.

2      Q.    And everything Elliott said.

3      A.    Pretty much.

4      Q.    Did he tell Elliott that he was going to have to go

5 to jail?

6      A.    I believe he did, yes.

7      Q.    What was Elliott's response to that?

8      A.    Well, of course, you know, he didn't want to go.

9 He was scared.  But like I say, Officer Holder was doing a

10 remarkable job on trying to explain to him that to get help

11 or to calm the situation down or to satisfy everybody that,

12 you know, there were certain things that had to be done and

13 this was one of the things in the process that had to be

14 done.  And like I said, he was doing the -- I felt like he

15 did an outstanding job of getting Elliott to cooperate.

16      Q.    You said that Jerry Holder explained what had to be

17 done.  What did he explain had to be done to make this thing

18 happen?

19      A.    Well, I think your question really was about, did

20 he tell him he had to go to jail.  He made it clear to

21 Elliott that he was going to have to go and that in going, he

22 was also going to have to be handcuffed.  And, you know, all

23 the things that I would imagine he felt like Elliott would

24 buck up about, he covered all of that so Elliott was in

25 agreeance rather than defiant about it.

1    an admirable job, but, you know, we were all very, very happy

2    that he didn't get sick during that.

3        Q.   What precipitated your move from Georgia to

4    Mississippi in 1995?

5        A.   Well, I was working for Glock and an outside

6    district sales manager position became available and because

7    Dad had passed away, I felt like it was important to get as

8    close to mom and Elliott as I could.  And so, it was a way to

9    stay with the company and take an outside position and get

10   closer to them.

11       Q.   I want to move now to the time frame we were

12   talking about, which is April 1, 2004, and the days leading

13   up to that.  You had testified, I believe, that you saw

14   Elliott's behavior change or ramp up at least two weeks prior

15   to April 1 of 2004.

16       A.   Yes.

17       Q.   Did you testify that he was asking for his pastor

18   during that time?

19       A.   I don't recall that.  The first time I recall him

20   asking to speak to Brother Bain was when Jerry Holder and I

21   were in the living room after he had got to the house.

22   That's the first recollection I have where he specifically

23   wanted to talk to him.

24       Q.   And when he asked for Brother Bain at that time,

25   did you respond in any way?

Deposition of KENT GUNTHARP, taken on FEBRUARY 15, 2006

Page 54

1      Q.   What are some of the other things you told him at

2  that point in time?

3      A.   Just generally to, you know, what Elliott's

4  sickness had been and the fact that, you know, he'd locked

5  Mother out of the house and that we were concerned for his

6  safety more than anything and that, you know, we just wanted

7  to get him in a safe environment so he could get help

8  because, you know, every time prior to that, that's kind of

9  the ways things worked.  He'd get sick.  We'd get him to

10  treatment.  They'd get him straightened out and to follow the

11  same thing that we followed before when this happened.

12      Q.   Did Officer Holder ever tell you that in order to

13  take Elliott off of y'alls hands at that moment he was going

14  to have to arrest him?

15      A.   You know, he picked at us questions in regard to

16  what Elliott had done and as I recall, you know, he had a

17  conversation with Mother about, you know, threatening her and

18  did he actually assault her and this, that and the other

19  thing.  And at some point in time then he turned to me and he

20  said, well, you know, let's try to go in and talk to him.  My

21  assumption at that point in time was that he had made the

22  decision to take him into custody.

23      Q.   Do you have any recollection of Holder specifically

24  talking to you and explaining, okay, I'm going to have to

25  arrest him but these charges will be dropped if the

Deposition of KENT GUNTHARP, taken on FEBRUARY 15, 2006

1    those charges?

2        A.   Well, I don't know.  Like I say, he was discussing

3    that with Mother and I was talking to my wife and Elliott

4    through the window when they were having that conversation.

5    So I don't know what they -- I don't know what they

6    discussed.

7        Q.   Did you hear that conversation?

8        A.   No.

9        Q.   Okay.  Did Jerry Holder ever tell you that Elliott

10   was going to have to be housed for some duration of time,

11   whether it be an hour or days, at the Itawamba County Jail?

12       A.   No.

13       Q.   Did you ever hear him say that to anybody?

14       A.   No.

15       Q.   Including Elliott?

16       A.   No, never heard him address that issue.

17       Q.   But he did tell Elliott, you've testified today,

18   that you're going to have to go to jail?

19       A.   Yeah.  He told him he was going to have to go with

20   him and he'd have to be handcuffed, you know, and so forth.

21       Q.   Did you ever tell Officer Holder that you did not

22   want Elliott arrested?

23       A.   No.

24       Q.   Did you have any conversation with Officer Holder

25   to that effect?

Deposition of KENT GUNTHARP, taken on FEBRUARY 15, 2006

1     A.   Not that I recall.

2     Q.   You never spoke up and said, hey, I don't like the

3 way this is going, hold everything?

4     A.   No.  Quite the contrary.

5     Q.   You were for this process --

6     A.   Yes.

7     Q.   -- as you saw it that day --

8     A.   Sure.

9     Q.   -- playing out before your eyes.

10     A.   Absolutely.  I saw it as getting some help.

11     Q.   Did your mother ever tell Officer Holder not to

12 arrest Elliott?

13     A.   Again, I don't -- I know you're going to talk to

14 her today.  She can tell you the facts.  I don't know.

15     Q.   Did you hear her say that?

16     A.   I did not.

17     Q.   How did Officer Holder convince Elliott to go with

18 him?

19     A.   He was just very professional.  He was very calm,

20 very professional trying to explain -- reassure Elliott,

21 empathizing with him, telling him that he was concerned for

22 his safety.  I mean, he was saying calming things and

23 friendly things to gain his trust, I think, and reassuring

24 him and, you know, he was getting Elliott calmed and

25 cooperative.

Deposition of KENT GUNTHARP, taken on FEBRUARY 15, 2006

Page 72

1   occurred, it was, like, thank God, now we can get him to

2   Jackson.

3       Q.   Do you know of Elliott going to court only one time

4   prior to being sent down to Jackson?

5       A.   I was only in there one time, yes, sir.

6       Q.   Okay.  Is that your understanding that that's the

7   only time Elliott went to court?

8       A.   Yes, sir.

9       Q.   Okay.

10      A.   Unless they brought him back to finalize or sign

11  this, I don't know.  I was only there one time.  It's my

12  understanding he only went one time.

13      Q.   And you mentioned you were present and Sandra was

14  present.

15      A.   And my wife was present.

16      Q.   Judy?

17      A.   Yes.

18      Q.   And was Phyllis present?

19      A.   Yes.

20      Q.   Did you hear Elliott say in court that day that

21  Mr. Massur -- Dr. Massur over at Region III was fooling

22  around with young boys?

23      A.   I don't recall the exact statement, but prior to

24  Elliott going up there were some other mental patients in

25  there with him and they got on a tangent about that; that he

Deposition of KENT GUNTHARP, taken on FEBRUARY 15, 2006

1   had propositioned them and we were talking amongst ourselves

2   in the bench there and, you know, it appeared to us that they

3   were basically trying to hammer the doctor and they were

4   throwing all kinds of accusations and Elliott chimed in and

5   participated in that. I don't know what the exact remark

6   was, but it had a sexual connotation and it was directed

7   toward one of the doctors. And like I say, in our opinion,

8   it was a response where he was kind of chiming in with the

9   rest of the people there that were making -- because there

10  were people before him that made direct accusations that this

11  doctor had propositioned them, but, yes, I did hear that.

12      Q.   The next document I want to show you is titled

13  Order of Commitment. It will be Exhibit Number 11.

14              (Thereupon, the document referred to was

15  marked as Exhibit No. 11)

16      Q.   Is this the first time you've seen that document?

17      A.   Yes, sir.

18      Q.   Do you have any reason to disagree with its

19  contents?

20      A.   No, sir.

21      Q.   And do you have any reason to dispute the date

22  shown on the bottom, which is April 7th of 2004?

23      A.   No, sir.

24      Q.   The next document I want to show you is titled

25  Amended Order of Commitment.

Deposition of KENT GUNTHARP, taken on FEBRUARY 15, 2006

1    A.    I do not.

2    Q.    Do you know anything about how that went down?

3    A.    I do not.

4         MR. LATIMER:   Ron, let me confer with Berk.

5         (After a recess the deposition continued as

6    follows:)

7    Q.    (Mr. Latimer)   Ken, we've got medical records from

8    Elliott's treatment at the VA hospital and one of our records

9    showed that you took part in a meeting on August 19th, 2004.

10   It was an outpatient meeting where you conversed with Calvin

11   Watson and some of his treating physicians and psychiatrists

12   and counselors down there.

13   A.    (Witness nods head up and down)

14   Q.    And in those records you tell them that Elliott on

15   August of '04 was under stress -- additional stress because

16   he was in the process maybe getting a divorce.   Do you

17   remember that conversation?

18   A.    Yes.

19   Q.    Those records don't reflect that you said anything

20   about Elliott's stay in the Itawamba County Jail.   Did you

21   mention that at that time?

22   A.    Well, I kind of sort of think they knew that.

23   Q.    Well, the records don't reflect that you mentioned

24   Itawamba County Jail being a stressor in Elliott Guntharp's

25   life.

Deposition of KENT GUNTHARP, taken on FEBRUARY 15, 2006

1    A.   No.   I think as you indicated, we were -- we try --

2  or at least I do when I talk to Calvin Watson, he always asks

3  the family members what we think, how's Elliott doing, and so

4  forth and so on.   And in my opinion, I think that might have

5  been a trigger.   I think the divorce thing, you know, very

6  well could have been what triggered this last episode, but

7  it's very common for us to -- like I said, my assumption is

8  they knew why he was down there.

9    Q.   But you didn't discuss the Itawamba County Jail

10 with him at that point.

11   A.   I don't recall.   And if you have the record, then

12 you have the record, but I haven't seen it.

13   Q.   Elliott testified earlier today about -- I don't

14 know if I want to call it faulty perception or paranoia, but

15 sometimes thinking things are there that are not and thinking

16 people are after him when they're not and that causing him

17 fear.   Did you hear him say that?

18   A.   Yes, I did.

19   Q.   Did I accurately state what his testimony was in

20 that area?

21          MR. WOODRUFF:   Object to the form.

22   Q.   (Mr. Latimer)   From your remembrance?

23   A.   The only thing in my mind, knowing him as his

24 brother and around him as a family member, that I think would

25 provide any additional clarity to that so there's no

1    Q.   When he was confiding with Sandy in the back room,

2    was your mother in there?

3    A.   I don't remember.

4    Q.   Do you remember any family members being in there

5    other than Sandra?

6    A.   I don't.

7    Q.   Do you know whether Elliott complained to Sandra

8    about jail conditions at that time?

9    A.   I believe he did.  I believe she told us that he

10   explained to her some of the things that he felt like had

11   been nightmarish to him or felt -- he felt like he'd been

12   tortured.

13   Q.   And nobody in your family brought those concerns

14   before Judge Mask that day, did you?

15   A.   We specifically and in a detailed fashion outlined

16   it to his attorney and asked her to do whatever she could to

17   see that this stopped immediately or did not continue.  We

18   asked her to please contact whoever she needed to contact.

19   Q.   Did she tell Judge Mask Elliott was being

20   mistreated in the jail?

21   A.   I don't know.

22   Q.   You were in the room.  You were in the room, were

23   you not?

24   A.   In --

25   Q.   The courtroom?

Deposition of KENT GUNTHARP, taken on FEBRUARY 15, 2006

1              MR. WOODRUFF:  Object to form.

2         A.    Oh, yes, sir.

3         Q.    (Mr. Latimer)  Did you hear her tell Judge Mask

4    that Elliott had been mistreated or mishandled in some way in

5    the Itawamba County Jail?

6         A.    No, sir, I did not.

7         Q.    Did you or any of your family members tell Judge

8    Mask that at that time?

9         A.    We were not given an opportunity to speak to the

10   judge.

11             MR. LATIMER:  We're done.

12             MR. WOODRUFF:  I've just got a few questions.

13

14                        EXAMINATION

15   BY MR. WOODRUFF:

16        Q.    Kent, you worked as a police officer for

17   approximately 18 years?

18        A.    I've been involved in law enforcement literally

19   from the time I was in college.  I was a cadet at a local

20   police department in the summers in between school and

21   semesters.  I worked at police departments and I continued to

22   do that until I went to work for the Glock Pistol Company 12

23   years ago.  That's all I've ever done is things that --

24   associated with law enforcement.

25        Q.    In fact, I believe you finished -- you got your

ADVANCED COURT REPORTING
(662)690-1500

2004-0119

STATE OF MISSISSIPPI

COUNTY OF _Itawamba_

Personally appeared before me, the undersigned Chancery Clerk

of ___ITAWAMBA_____ County, Mississippi, the within named

___PHYLUS GUNTHARP___ who being first by me duly sworn,
(name of affiant)

makes oath and deposes that:

1. Affiant (is) (is not) a relative of _____

___ELLIOTT L. GUNTHARP_____ being a
(name of person in need of mental treatment)

___MOTHER___ of said person; affiant is an adult resident

of ___ITAWAMBA___ County, Mississippi and affiant (is) (is not)

financially able to post the sum of $ _#180 00_, a reasonable

sum for court costs.

2. ___ELLIOTT L. GUNTHARP___ is a resident of ___ITAWAMBA___

County, Mississippi, or is now found in ___ITAWAMBA___ County,

Mississippi and is a person mentally ill as defined by law, and poses a substantial

likelihood of physical harm to him/herself or others as a result of a recent attempt

or threat to physically harm him/herself or others; or by a failure to provide necessary

food, clothing, shelter or medical care for him/herself.

3. (A) The behavior tending to prove said person's mental illness are:

(include a factual description of the patient's recent behavior, including a description

of the behavior, where it occurred, and over what period of time it occurred. State

facts, rather than opinions or conclusions to which there were witnesses as named

in the next section.) ___ELLIOTT HAS BECOME EXTREMELY

HOSTILE, AGGRESSIVE & VIOLENT IN DEMEANOR TO

FAMILY MEMBERS. HE IS MAKING THREATS AND

HAS ASKED FAMILY MEMBERS TO GET HIM A GUN.

HE IS ERRATIC IN HIS BEHAVIOR, EXHIBITING

DEFIANT & CONFRONTATIONAL ATTITUDES TOWARD

EVERYONE HE COMES IN CONTACT WITH. HE IS THREATENING

TO LEAVE THE STATE AND HAS WITHDRAWN UNUSUAL SUMS

MONEY FROM THE BANK. HE REFUSED MEDICAL TREATMENT___

PAGE 1

Filed _30th_ day of _March_ 2004 _____ page _____

Recorded in M.B. _____
JIM WITT, Clerk

EXHIBIT
5 K Guntharp
2-15-06

000001

(3) The names and addresses of any of the witnesses to the

behavior described above:

| NAME | ADDRESS |
|------|---------|
| JUDY (BROTHER) KENT GUNTHARP | 507 N. HUSDALE DR. TUPELO, MS 38804 |
| (SISTER-IN-LAW) SANDY GUNTHARP | 39930 N. DEWEY ST. SPRING GROVE, IL 60081 |

The nearest kin or the guardian of said person is: __PHYLLIS GUNTHARP__

(name)

who is the __MOTHER__ of said person

( degree of kinship)

whose address is __102 BUENA VISTA DR. FULTON, MS 38843__ or ( affiant has

made diligent inquiry but has been unable to discover the name and address of the near-

est kin or guardian of the person alleged to be in need of mental treatment.

4. Affiant understands that the law provides that costs of the proceeding, (includ-

ing, but not limited to court costs, prehearing hospitalization costs, costs of transportation,

reasonable doctor and psychologist fees and reasonable attorney fees) shall be taxed to

affiant if said person is found not to be in need of mental treatment.

5. Affiant has not unlawfully conspired to, has not unlawfully caused and does not

hereby seek to unlawfully cause the name person to be adjudicated mentally ill or as in-

competent or to be detained at or admitted to hospitalization at any Mississippi mental in-

stitution or hospital.

WHEREFORE, affiant requests that __ELLIOTT L. GUNTHARP__ be

committed to the least restrictive treatment facility that can meet said person's treatment

need as in accordance with Mississippi Code S41-21-65.

_Phyllis Guntharp_

(signature of affiant)

SWORN TO AND SUBSCRIBED BEFORE ME, this the __30th__ day of

__March__, ~~19~~ 2004

CHANCERY CLERK

DEPUTY CLERK 000002

PAGE 2

ELLIOTT L. GUNTHARP
_Alleged Lunatic_

NO. _____

PHYLLIS GUNTHARP
_Affiant_

In accordance with Section 6909-03 of the Mississippi Code of 1942 as Amended and in the interest of ELLIOTT L. GUNTHARP the above alleged lunatic, person insane, feebleminded, idiotic or suffering from any other mental or nervous condition, affliction or disorder to such an extent that such person be or is likely to become dangerous or a menace if left at large, I, PHYLLIS GUNTHARP, a relative of the above named lunatic, being related to them as a MOTHER, or I, _____ a citizen of the State of Mississippi, and not related to the above named lunatic make the following AFFIDAVIT FOR COMMITMENT, said affidavit being that prescribed as outlined in Section 1574 of the Mississippi Code of 1942, as follows, to-wit:

## AFFIDAVIT FOR COMMITMENT

STATE OF MISSISSIPPI, County of Itawamba

I, PHYLLIS GUNTHARP, do solemnly swear that I am a citizen of the State of Mississippi, and because of my poverty I am not able to pay the costs or give security for the same in the suit, above styled, which I am about to commence or have in fact commenced, and that to the best of by belief, I am entitled to the redress which I seek by such suit. I hereby make this affidavit, in lieu of the required cost of this hearing, which is the cost required to be deposited with the Chancery Clerk for the hearing, exclusive of mileage paid to the sheriff for transporting the person to the proper institution.

Given under my hand and seal this the 30th day of March 2004

102 BUENA VISTA DR. FULTON, MS 38843
(Address)

x Phyllis Guntharp
(Affiant's Signature)

STATE OF MISSISSIPPI, County of Itawamba

Before me this date, Jim Witt, Chancery Clerk, Ita.County, Mississippi, personally appeared Phyllis Guntharp affiant, in the above cause and affirms that said affidavit is made under oath. This the 30th day of March, 2004

Jim Witt, Chancery Clerk

000003

PAGE 3

# MEDICAL HISTORY

Family Physician __DR. TIM EVANS__ Telephone _____
Current medications or drugs_____

## PHYSICAL CONDITIONS

| | |
|---|---|
| Diabetes........_____ | T.B. ........_____ |
| Hypertension...._____ | Convulsions.._____ |
| Emphysema/COLD.._____ | Cancer......._____ |
| V.D. ........._____ | Other chronic illness |
| Heart Condition._____ | (please state)_____ |

## PERSONAL AND FAMILY HISTORY

Name of Father: __DECEASED__    Name of Mother: __PHYLLIS (MACLUY) GUNTHARP__
       (Full Name)                      (Maiden Name)
Name of Spouse __SAN__    Number of Dependents __0__
How many in Household ? __2__

## PROBLEM APPRAISAL: (Circle all which apply)

### PHYSICAL FUNCTION DISTURBANCE

1. (Sleep) — circled
2. Eating
3. Enuresis, soiling
4. Seizures, Convulsions
5. (Emotional) — circled
6. Speech Articulation problems

### INTELLECTUAL DEVELOPMENT

7. Hearing Disabilities
8. (Mental Retardation) — circled

### SOCIAL RELATIONS DISTURBANCE

9. With Child
10. (With Mate, Spouse) — circled
11. (With other Family) — circled
12. (With other people) — circled

### SOCIAL PERFORMANCE DISTURBANCE

13. Job
14. School
15. Housekeeping
16. (Behavioral) — circled

### OTHER SIGNS & SYMPT.

17. Suicidal Thoughts
18. Suicidal Gestures
19. (Anxiety, Fears, Phobias) — circled
20. (Stop taking Medication) — circled
21. (Management Problems at home) — circled
22. (Obsessions, Compulsions) — circled
23. (Depressed Mood, inferiority) — circled
24. Somatic Concerns
25. Social Withdrawal, Isolation

26. Dependency, Clinging
27. (Grandiosity) — circled
28. (Suspicion, Persecution) — circled
29. Grandiosity
30. (Delusions) — circled
31. (Anger, Belligerence Negativism) — circled
32. Assultive Acts
33. Sexual Problems
34. (Anti-Social Attitudes, Acts) — circled
35. Agitation, Hyperactivity
36. Disorientation, Impaired Memory
37. Speech Disorganization
38. Slowed Up, Lack of Emotion
39. (Inappropriate, Affect Behavior) — circled
40. Daily Routine Leisure Time Impairment
41. Psychomotor Retardation (Catatonic)

_Phyllis Guntharp_    3/30/04
    SIGNATURE                DATE

000004

# DEPARTMENT OF MENTAL HEALTH
## PATIENT INFORMATION

Patient Name: __ELLIOTT LEE GUNTHARP__      Social Security No. _____
First   Middle   Maiden   Last

Address: __102 BUENA VISTA DR.   FULTON, MS   38843__
                                                  City      State      Zip

Home Phone: __662-862-9370__  Work Phone: _____   DOB: __3/22/60__  Sex: __MALE__

Race: 1. ASIAN   2. BLACK/AFRICAN AMERICAN   3. NATIVE AMERICAN INDIAN   4. ALASKAN NATIVE   (5.) WHITE/CAUCASIAN   6. OTHER _____

Religion: 1. BUDDHIST   2. CATHOLIC   3. HINDU   4. ISLAMIC   5. JEWISH   (6.) PROTESTANT/BAPTIST   7. PROTESTANT/METHODIST
(Circle One)   8. PROTESTANT/OTHER   9. CHRISTIAN SCIENTIST   10. JEHOVAH'S WITNESS   11. UNKNOWN   12. NONE   13. OTHER _____

County of Residence: __ITAWAMBA__   County of Commitment: _____

## CLIENT DEMOGRAPHICS

Marital Status: 1. DIVORCED   (2.) MARRIED   3. SEPARATED   4. SINGLE   5. UNKNOWN   6. WIDOWED

Living Arrangement: 1. LIVES ALONE   3. WITH PARENTS   5. WITH CHILDREN   7. WITH RELATIVES   9. WITH OTHERS (Please State)
(Circle One)   2. WITH SPOUSE   (4.) WITH ONE PARENT   6. WITH SIBLINGS   8. WITH LEGAL GUARDIAN   _____

Residential Arrangements: (1.) PRIVATE RESIDENCE   3. HOMELESS   5. COMMUNITY PROGRAM   7. OTHER:
(Circle One)   2. OTHER INDEPENDENT RESIDENCE   4. INSTITUTION   6. CORRECTIONAL FACILITY   _____

Education: (Circle highest level completed)  1  2  3  4  5  6  7  8  9  10  11  (12)  13  14  15  16  17  18

Veteran: __YES__

## CLIENT BACKGROUND INFORMATION

Birth Country __U.S.A.__   State __WISCONSIN__   County __KENOSHA__   City __KENOSHA__

Language __ENGLISH__   U. S. Citizen __YES__   MS Citizen __YES__

Hispanic : 1. CUBAN   2. MEXICAN   3. PUERTO RICAN   4. OTHER HISPANIC _____

Employment __N/A__   Occupation _____

Criminal History __N/A__   Charges Pending   Yes _____   No _____

## PHYSICAL IMPAIRMENT (Please circle all that apply)

| | | | | | |
|---|---|---|---|---|---|
| 01 | DEAFNESS AND BLINDNESS | 05 | AMBUL. ONLY W. ASSIST. DEVICE | 97 | OTHER   PLEASE SPECIFY: |
| 02 | DEAFNESS/SEVERE HEARING LOSS | 06 | UNABLE TO COMMUN. W/VERB. SPCH | | |
| 03 | BLIND/SEVERE VISION LOSS | 07 | TRAUMATIC BRAIN INJURY | 98 | UNKNOWN |
| 04 | NONAMBULATORY | 08 | MAJOR MEDICAL CONDITION | 99 | NOT APPLICABLE |

## INSURANCE INFORMATION

Medicare Number: _____   Medicaid Number: _____

Third Party: _____   Name of Insured: _____

Insurance Company: _____   Name of Employer: _____

Contract Number: _____   Group Number: _____

If veteran, list amount of compensation: __100 %__

000005

PAGE 5

## CORRESPONDENT

Correspondent Name: _PHYLLIS GUNTHARP_

Address: _102 BUENA VISTA DR. FULTON, MS 38843_
                            City          State        Zip

Phone No: _662 - 862 - 9370_    Relationship to Patient: _MOTHER_

Name of additional contacts: _____

Address: _____

Phone No: _____    Relationship to Patient: _____
                            City          State        Zip

## PRIOR TREATMENT (Please circle facility and state dates)

0.   None

1.   Unknown

2.   MS State Hosp. _____

3.   E MS State Hosp. _____

④.   V. A. Hosp. _CURRENT_

5.   General Hosp. _____

6.   Alcohol/Drug Trmt. Ctr. _____

7.   Community MH Ctr. _____

8.   Institution for Mentally Ret. _____

9.   Other Psychiatric Facility _____

10.  Other _____

## SUBSTANCE ABUSE (Please state if known)

Alcohol _____    Drugs _____

## ADMITTED FROM

Please indicate where the patient is being held prior to admission.

Home _____    Hospital _____    Jail _____    Other _____

## WEEKLY FAMILY INCOME
### ( circle one )

| | | |
|---|---|---|
| 0.  Public Assistance | 2.  $50 - $99 | 4.  $150 -$199 | 6.  Over $300 |
| 1.  Below $50 | 3.  $100 -$149 | 5.  $200 - $299 | 7.  Unknown |

x _Phyllis Guntharp_
      SIGNATURE

_3/30/04_
      DATE

000006

PAGE 6

EXHIBIT
6 K. Guntharp
2-15-06

# IN THE CHANCERY COURT OF ITAWAMBA COUNTY, MISSISSIPPI

## APPOINTMENT OF PHYSICIAN/PSYCHOLOGIST

TO _____

_____

An affidavit having been made by _Phyllis Guntharp_ that one _Elliott L. Guntharp_ is in need of mental treatment, you are hereby appointed and directed to make a full inquiry into the mental condition of and make a mental examination of such person at _Region III Mental Health_ within twenty-four (24) hours of this notice.

You are further ordered, at the beginning of the examination to tell said

_____ in plain language of the purpose of the examination, its possible consequences, and his/her right to refuse to answer questions: and to have his/her lawyer present; and to report your findings in writing within the time set by law to _____ of the Chancery Court.
(Clerk or Chancellor)

GIVEN UNDER MY HAND AND OFFICIAL SEAL, AND ISSUED THIS THE
1st DAY OF _April_, 20 04, AT _4:00_ (AM)(PM).

_Jacqueline Estes Mask_
CHANCELLOR

PAGE 8

000007

Filed _2nd_ day _April 2004_
Recorded in M.B. _98_ page _389_
JIM WITT, Clerk



# IN THE CHANCERY COURT OF ITAWAMBA COUNTY, MISSISSIPPI

## TO THE CHANCERY CLERK OF ITAWAMBA COUNTY

### ORDER

You will issue the order to take said person _Elliott L. Gunthorp_ into custody and transport _____ _him_ _____ to the Mental Health Complex for an examination.

ORDERED, ADJUDGED AND DECREED, this the _1st_ day of _April_, 20 _04_.

_Jacqueline Este Mask_

CHANCELLOR

000008

PAGE 9

EXHIBIT
8 K. Guntharp
2-15-06

## WRIT TO TAKE CUSTODY

To the Sheriff of Itawamba County

An affidavit having been made, alleging that one *Elliott L. Guntharp*

now in your County, is mentally ill you are hereby commanded to immediately take

said person into your custody and place (her)(him) at _____

and retain custody of said person until further ordered of the undersigned, so the

(she)(he) may be examined according to law by those duly appointed by the

(clerk)(chancellor). You shall report hereon of your compliance herewith and file

same with the Clerk of this Court.

Given under my hand and official seal, this the 1st day of *April*,

20 04, at 4:00 (AM)(PM)

*Jacqueline Este Mask*

(CHANCELLOR) (CHANCERY CLERK)

Custody Taken: _____, 20 ___ at _____ (AM)(PM)

Delivery to : _____

at _____ (AM)(PM) _____ ,20___.

Persons present at the time and place of taking custody (preferably relatives):

| NAME | ADDRESS |
|------|---------|
| _____ | _____ |
| _____ | _____ |

_____ SHERIFF

By _____

PAGE 11

000009

Filed ___ 2nd ___ day ___ April ___ 2004

Recorded in M.E. ___ 98 ___ page 391

JIM WITT, Clerk

CERTIFICATE OF EXAMINING PHYSICIAN / PSYCHOLOGIST

EXHIBIT
*G K Guntharp*
*2-15-06*

I (We), _Lisa Martin_ and _Joe T. Goff_

do hereby certify that the ___2nd___ day of _April_, 19 _2004_

we conducted an examination of _Elliott L. Guntharp_,

of _Itawamba Co_, Mississippi, the report of which is attached to

this certificate.

I (We) do further certify that recent behavior of said _Elliott L. Guntharp_

has included:

_____ grossly disturbed behavior/faulty perceptive

_____ substantial likelihood of physical harm as manifested by:

_____ recent threat or attempt to physically harm self
or others

_____ failure to provide necessary care for self

In my (our) opinion, _Mr. Guntharp_ (does not pose) (poses) a

substantial likelihood of physical harm to (him) (her) self or others and should (should not) be

committed to a treatment facility. The reasons for our opinion are as follows:

_Client declines exam. Hx from Family & deputies_
_suggests acute psychosis, disorganization &_
_severe aggression in home. Needs contained Tx_

So certified this the ___2nd___ day of _April_, 19 _2004_

_____          _____
Lisa Martin M.D.     NAME              Clinical Symbol     TITLE

_____          _____
Joe Goff           NAME               psychiatrist     TITLE

_He asks to await a preacher for the exam,_
_refusing & exam implicit, need for pt_
_to be contained & committed_

Filed ___5th___ day of _April_ 20 _04_

Recorded in M.B. _____ page _____
JIM WITT, Clerk

000011

IN THE _Chancery_ COU OF _Itawamba_ COUNTY RE: _Elliott L. Guntharp_
_(TYPE OF COURT)_ _(NAME OF COUNTY)_

CAUSE NO. _04-0119_ SERVICE CODE _140 7_ UNITS OF SERVICE _8_ DATE _4-2-04_

`espondent having been evaluated and pre-screened for commitment pursuant to M.C.A. Section 41-21-67, Region _III_
Mental Health Center offers the following:

Legal Charges Pending Yes ☐ No ☑

| PERSONAL DATA INFORMATION |
|---|

NAME: _Elliott L. Guntharp_ SOCIAL SECURITY NO. _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_ DOB _3-22-60_

RACE: _C_ MARITAL STATUS: ☐ Single ☑ Married ☐ Divorced ☐ Widowed SEX: ☑ Male ☐ Female

ADDRESS: _102 Buena Vista Dr_
_Fulton MS 38843_
_662.862.9370_

NAME OF SPOUSE/NEXT OF KIN: _Phyllis Guntharp_ COUNTY OF RESIDENCE: _Itawamba_
MEDICAID # _No_ MEDICARE # _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 A_

EDUCATION _(Circle Highest Grade Completed)_ 1 2 3 4 5 6 7 8 9 10 11 ⑫ 13 14 15 16 17 18 GED

OCCUPATION: _Disabled_ PRESENTLY EMPLOYED ☐ Yes ☑ No

EMPLOYER: _None_ LENGTH OF EMPLOYMENT: ___ years ___ months

HOUSEHOLD COMPOSITION _(Mark All That Apply)_

☐ Lives Alone ☐ With Siblings ☐ With Parents ☐ With One Parent ☐ With Children
☐ With Spouse ☐ With Relatives ☐ With Legal Guardian ☐ With Others ☐ Others_____

NUMBER OF DEPENDENTS (S): _____

NAME OF AFFIANT _(Person Filing Papers)_

Name: _Phyllis Guntharp_ Relationship: _Mother_ Phone:(H)_____ (W)_____

Address: _Same_ City_____ State____ ZipCode_____

FAMILY CONTACT

Name: _Same_ Relationship:_____ Phone:(H)_____ (W)_____

Address:_____ City_____ State____ ZipCode_____

PERSON WITH LEGAL CUSTODY, GUARDIANSHIP, and/or Conservatorship

Name: _Self_ Relationship:_____ Phone:(H)_____ (W)_____

Address:_____ City_____ State____ ZipCode_____

000012

PREVIOUS MENTAL HEALTH HOSPITALIZATION, SERVICES, A&D TREATMENT *(List Where & When)*

VA system ; Region III MHC

CURRENT MEDICATIONS *(List Name and Dosage)*

*Name* OK meds & no informant                         *Dosage*

COMPLIANT WITH MEDICATIONS:   ☐ Yes   ☒ No   ☐ Unknown

ALLERGIES ☐ Yes   ☐ No     If Yes, Explain_____

Pt refuses to be interviewed

PREVIOUS SURGERY:   ☐ Yes   ☐ No   If Yes, Explain_____

CONCURRENT PHYSICAL CONDITIONS *(Mark all that apply)*   No hx available

☐ Diabetes          ☐ Emphysema/Cold       ☐ Heart Condition     ☐ Seizures
☐ Hypertension      ☐ S.T.D.               ☐ TB                  ☐ Cancer
☐ Contagious Disease ☐ Other Chronic Illness ☐ (Please State)_____
☐ Hepatitis
Elaborate on acute medical conditions of conditions marked (if needed)_____

FAMILY PHYSICIAN:   Dr. Tim Evans

DESCRIBE BEHAVIORS EXHIBITED BY RESPONDENT. Also consider information from affiant and/or affidavit.
*(Mark appropriate answer and/or write in additional pertinent descriptions.)*

History or Present Danger to Self      ☒ Yes   ☐ No    *(If Yes. Mark Appropriate Statements Below)*

☐ Thoughts of suicide      ☐ Threats of suicide     ☐ Plan for suicide       ☐ Pre-occupation with death
☐ Suicide gesture          ☐ Suicide attempts       ☐ Family history of suicide ☐ Self-mutilation
☐ Inability to care for self ☒ High risk behavior    ☒ Provoking harm to self from others
☐ Other
Describe: Family reports his behavior is extremly provocative

☐ Thoughts to harm others ☐ Threats to harm others ☐ Plans to harm others

☑ Attempts to harm others ☐ Stalking ☐ Has harmed others ☐ Possession of weapon

☐ Felt like killing someone ☐ Inability or unwillingness to care for dependents

☐ Other _____

Describe: _Family reports he is menacing & asking for a gun —_
_resisting deputies_

---

**Failure to Care for Self**   ☑ Yes   ☐ No   *(If Yes, Mark Appropriate Statements Below)*

Failure or inability to provide necessary ☐ Food ☐ Clothing ☐ Shelter ☐ Safety ☐ Medical care for self

☐ Other _____

_Acutely psychotic_

---

**Antisocial/Criminal Behavior**   ☐ Yes   ☑ No   *(If Yes, Mark Appropriate Statement Below)*

☐ Frequent lying        ☐ Stealing          ☐ Running away from home   ☐ Excessive fighting
☐ Destroys property     ☐ Fire setting      ☐ Cruelty to other         ☐ Cruelty to animals
☐ Arrests               ☐ Gang membership   ☐ Brandishing weapons      ☐ Convictions
☐ Imprisoned            ☐ Promiscuity       ☐ Exhibitionism            ☐ Family desertion
☐ Uses assumed name     ☐ Identify any legal charges which may be pending
☐ Other _____

Describe: _____

---

**Drug Use/Abuse**   ☐ Yes   ☑ No   *(If Yes, Mark Appropriate Statement Below)*

☐ Has abused   ☐ Is abusing   ☐ Narcotics   ☐ Amphetamines   ☐ Barbiturates   ☐ Hallucinogens
☐ Cocaine   ☐ Marijuana   ☐ Absenteeism   ☐ Job loss   ☐ Arrests
☐ Has required hospitalization   ☐ Family problems due to drug use   ☐ Currently under the influence of drugs
☐ High-risk behavior occurs primarily when under influence of drug-seeking
☐ Other _____

Describe: _No hx_

---

**Alcohol Use/Abuse**   ☐ Yes   ☑ No   *(If Yes, Mark Appropriate Statement Below)*

☐ Drinking problem suspected        ☐ Intoxicated now        ☐ Has required hospitalization
☐ D.T.'s                            ☐ Black-outs             ☐ Absenteeism
☐ Job loss                          ☐ Arrests/DUI            ☐ Family problems due to drinking
☐ Currently under the influence of alcohol. (BAL, if available.)
☐ High-risk behavior occurs primarily when under the influence of alcoholic beverages, including beer.
☐ Other _____

Describe: _No hx_

---

000014

☐ Sadness          ☐ Fatigue          ☐ Hypoactive          ☐ Low Energy          ☐ Loss of interest

☐ Crying          ☐ Poor Concentration          ☐ Extreme Withdrawal          ☐ Weight loss or gain          ☐ Guilt feelings

☐ Feelings of worthlessness          ☐ Hopelessness about the future

☐ Thoughts/threats of suicide          ☐ Sudden drop in grades or change in friends (especially in adolescents)

☐ Other_____

Describe:_____
_____

---

**Manic-Like Behavior**          ☐ Yes    ☒ No    *(If Yes, Mark Appropriate Statement Below)*

☐ Euphoria          ☐ Hyperactivity          ☐ Over talkativeness and/or pressured speech          ☐ Grandiosity

☐ Irritability          ☐ Sexual promiscuity          ☐ Sleep disturbance          ☐ Extravagance with money

☐ Other_____

Describe:_____
_____

---

**Psychotic-Like Behavior**          ☒ Yes    ☐ No    *(If Yes, Mark Appropriate Statement Below)*

☒ Poor personal hygiene          ☐ Loose Association          ☐ Suspiciousness          ☐ Bizarre or obscene acts

☒ Flat or inappropriate affect          ☐ Withdrawn          ☐ Incoherence          ☐ Unmanageable

☒ Talks often          ☐ Disorientation          ☐ Wanders off          ☐ Illusions

☐ Disorganized speech or behavior          (time, place, people)          ☐ Delusions

☐ Doesn't make sense          ☐ Irritability          ☐ Hallucinations

☐ Forgetfulness          ☐ Emotional turmoil          ☒ Poor judgement

☐ Confusion

☐ Other_____

Describe:_Family describes acute psychotic level disorganization_
_as do deputies_

---

**Dementia-Like Characteristics**          ☐ Yes    ☒ No    *(If Yes, Mark Appropriate Statement Below)*

☐ Confusion          ☐ Disorientation          ☐ Wanders off          ☐ Impaired judgement          ☐ Getting lost

☐ Absent-mindedness          ☐ Impaired abstract thinking          ☐ Significant short-and/or long term memory impairment

☐ Decline in activities of daily living *(Consider age of respondent)*

☐ Other_____

Describe:_____
_____

000015

CHILD/ADOLESCENT CONDUCT DISTURBANCE:     (Current Behavior or During Childhood)   ☐Yes  ☐No
(If Yes, Mark Appropriate Statement Below)

☐Theft              ☐Fire-setting           ☐Cruelty to people        ☐Cruelty to animals
☐Aggression         ☐Sexual Misconduct      ☐Arrest/detainment        ☐Combativeness/aggression
☐Refusal to attend school                   ☐Running-away behavior    ☐Defiance of authority and rules
☐Possession/Use of weapons                  ☐Destruction of property
☐Other

Mental Retardation     ☐Yes  ☐No   (If Yes, Mark Appropriate Statements Below)

☐History of special education placement  ☐Documented IQ below 70
☐Inability to care for self or activities of daily living     ☐Significantly subaverage intellectual functioning before age 18
☐Substantial limitations in adaptive skills (communication, self-care, home living, social skills, community use, self-direction, health and safety, leisure and work)
☐Other

Other          ☐Yes  ☐No   (If Yes, Mark Appropriate Statement below)

☐Anxiety      ☐Panic         ☐Eating disorders     ☐Sexual disorders     ☐Impulsive disorders
☐Obsessive disorders    ☐Other:

### RECOMMENDATIONS

Examination for Commitment:     ☐Yes  ☐No
If yes, is outpatient commitment currently an option for the respondent.     ☐Yes  ☐No   Explain:

Behavior too aggessie to rgut

If no, explain why outpatient commitment is not an option for the respondent:

### SUPPORT RECOMMENDATIONS (Inpatient Treatment Facility)

NMSH or VA if it can be arranged

_Lou Mason III, MA_                    4-2-04
Signature of Screener/Credentials              Date

_Louis Mason III_
Print Name

000016

EXHIBIT
10 K. Gunharp
2-15-06

IN THE CHANCERY COURT OF ITAWAMBA COUNTY, MISSISSI

RE: IN THE MATTER OF )
THE COMMITMENT OF )        NUMBER 2004-0119
)
Elliott Guntharp )

## WAIVER OF HEARING

COMES NOW, Michele H. Floyd        , the Court appointed attorney

for  Elliott Guntharp        , alleged to be in need of inpatient commitment

for mental treatment, and does hereby knowingly and voluntarily, and with the informed

consent of the Respondent, waive the need for the hearing. The Respondent is not under

the influence of drugs or medication or other treatment that has hampered the decision to

waive the hearing, and does so for the following reason(s):

he cannot care for ~~his~~ himself and is

making threats to family members

By executing and filing this Waiver, the Respondent understands that an order of

commitment will issue pursuant to law.

Witness my signature, this the 7ᵗ day of April        , 20 04

_Michele H. Floyd_
ATTORNEY FOR RESPONDENT

Approved by:  Elliott Guntharp

SWORN TO AND SUBSCRIBED BEFORE ME, on this the 7ᵗʰ day of

April        , 20 04

NOTARY PUBLIC   Filed

My Commission Expires: 1-1-2008

Recorded in M.B. 98 page 432
JIM WITT, Clerk

Approved by the Court on this the 7ᵗʰ day

of April, 2004.

Jacqueline Estes Mask

000017

IN THE CHANCERY COURT OF ___Itawamba___ ___ COUNTY

STATE OF MISSISSIPPI

EXHIBIT
K. Guntharp
11/15/06

IN THE MATTER OF:

Elliott Guntharp                                    NO. 2004 - 0119

ALLEGED TO BE MENTALLY ILL

ORDER OF COMMITMENT

This matter having come on for hearing, according to law, and the
court having found as follows:

I.

The Respondent (was present at the hearing) (intelligently and
knowingly waived a hearing with the approval of the court) (was unable to attend
the hearing for the following reasons: _____

_____

II.

The court has jurisdiction over the subject matter and all necessary
parties.

III.

The court (received a record of all drugs or other treatment received
by the Respondent pending the hearing) (has determined that an accurate record
of drugs or medication is not practical for the following reasons: _Respondent_
_executed a Waiver_____

IV.

The respondent was not so under the influence of drugs, medication
or other treatment as to be hampered in participating in the proceedings.          000018

V.

The Respondent has recently threatened / attempted to physically
harm him / herself / others: _____

Filed ____7th____ day Apr 20 04

Recorded in M.B. __98__ page __433__   435

The respondent has recently failed to care for him /herself _____

_____

_____

## VII.

The Respondent, by clear and convincing evidence is a mentally ill person who poses a substantial likelihood of physical harm to him /herself or others.

## VIII.

The following (out - patient care) (alternative living arrangements) (other) has (have) been considered as alternatives to institutionalization and have been found (not) suitable for the following reasons: based upon the doctor's report and the execution of a waiver, there is no alternative _____

## IX

There is (no) suitable alternative to judicial commitment: _____

_____

_____

It is therefore ordered and adjudged that the Respondent be committed to a state mental health facility ,

(for treatment facilities - to be admitted at such time as the Director determines that adequate facilities and services are available); said commitment to remain in effect for ___90___ (not to exceed ninety) days, unless terminated earlier as provided by law.

SO ORDERED AND ADJUDGED, this the 7ᵗʰ day of April

2 2004.

000019

_Jacqueline Este Mask_
(CHANCELLOR)

_Michele H. Floyd_
(LAWYER FOR RESPONDENT)

It is further ordered, adjudged and decreed that the cost of this cause in the amount of $ 80.00 , be and they shall be paid by Itawamba County for all of which let attachment, garnishment and other processess of this court issue.

It is further ordered, adjudged and decreed that the following entities and amounts be paid:

_____ . . . . . . $_____
 MASTER

_____ . . . . . . $_____
 PHYSICIAN

_____ . . . . . . $_____
 PHYSICIAN

Michele H. Floyd . . . . . . $ 100.00 _____
 ATTORNEY FOR RESPONDENT

ORDERED, ADJUDGED AND DECREED on this the 7th day
of April 2004

_____
 CHANCELLOR

000020



IN THE CHANCERY COURT OF ITAWAMBA COUNTY, MISSISSIPPI

IN THE MATTER OF
ELLIOTT GUNTHARP
ALLEGED TO BE MENTALLY ILL                          CAUSE NO. 2004-0119

## AMENDED ORDER OF COMMITMENT

This matter came on for hearing, according to law, and after finding that it has

jurisdiction of the parties and the subject matter, the court finds as follows:

1.

That an Order of Commitment was rendered by this Court on April 7, 2004, which

committed the Respondent to a state mental health facility, and the Respondent is in the

Itawamba County jail awaiting an available bed at the state mental health facility.

2.

That the Respondent is a United States Veteran and can be treated at the Veterans'

Hospital in Jackson, Mississippi.

3.

That it would be in the best interest of the Respondent to have transportation to a state

mental health facility withheld pending his successful completion of treatment at the Veterans'

Hospital in Jackson, Mississippi, being that he can be immediately treated at the Veterans'

Hospital.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that transportation to a

state mental health facility be withheld pending successful completion of treatment at the

Veterans' Hospital in Jackson, Mississippi; that the Respondent be transported to said Veterans'

Hospital; that should the Respondent fail to successfully complete treatment at said Veterans'

Hospital that transportation to a state mental health facility be immediately reinstated; and that all

**000021**

Filed _____ day _____ 2004

Recorded in M.B _____ page _____

ITAWABA, Clerk

other conditions of that Order of Commitment dated April 7, 2004 are to remain in full force and effect.

SO ORDERED, ADJUDGED AND DECREED this the 8th day of April, 2004.

JACQUELINE ESTES MASK,
CHANCELLOR

MICHELE H. FLOYD,
ATTORNEY FOR RESPONDENT

000022



IN THE CHANCERY COURT OF ITAWAMBA COUNTY. MISSIS...

IN THE MATTER OF
ELLIOTT GUNTHARP
ALLEGED TO BE MENTALLY ILL

CAUSE NO. 2004-0119

## AGREEMENT AND RELEASE

I , Phyllis Guntharp, hereby acknowledge that my son, Elliott Guntharp, can receive

transportation to the Veterans' Hospital in Jackson, Mississippi by the Itawamba County

Sheriff's Department.   I also acknowledge that I am releasing the Itawamba County Sheriff's

Department from this duty and desire to provide transportation for my son, Elliott Guntharp.  I

hereby further agree to relinquish and hold harmless, Itawamba County, Mississippi, its agents,

employees and representatives, from any cause of action, whatsoever, that may arise as a result of

my providing my son with transportation to the Veterans' Hospital in Jackson, Mississippi.

WITNESS MY SIGNATURE on this the 8th day of April, 2004.

_Phyllis Guntharp_
PHYLLIS GUNTHARP

SWORN TO AND SUBSCRIBED before me on this the 8th day of April, 2004.

_Michele H. Lloyd_
Notary Public

Filed _8th April 2004_

Recorded in M.B. _____ page ____
JIM WITT, Clerk

000023