**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**ELLIOTT GUNTHARP**                                                    **PLAINTIFF**

**VS.**                                                    **CIVIL ACTION NO. 1:05CV177-D-A**

**ITAWAMBA COUNTY SHERIFF'S DEPARTMENT**
**and ITAWAMBA COUNTY, MISSISSIPPI, SHERIFF**
**PHILLIP CRANE, in his individual capacity, Jail**
**Administrator KENNETH KNIGHT, in his individual**
**capacity, and PATRICK GRAHAM**                                **DEFENDANTS**

---

**DEFENDANTS' REBUTTAL MEMORANDUM BRIEF IN**
**SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

Defendants, Itawamba County Sheriff's Department and Itawamba County, Mississippi,

Sheriff Phillip Crane, in his individual capacity, and Jail Administrator Kenneth Knight, in

his individual capacity, submit this Rebuttal Memorandum in Support of their Motion for Summary

Judgment.

## **INTRODUCTION**

Plaintiff has failed to respond to Defendants' Motion for Summary Judgment with

specific facts showing there is a genuine issue for trial. The facts he does allege fail to meet the

elements required to establish his constitutional and state law claims.

The undisputed facts reveal that Plaintiff's family called the police and had him arrested

on assault and domestic violence charges because he chased his mother out of her home with a

Bufford Pusser axe handle. (Phyllis Guntharp depo., p.36-37, Ex. "C" to Motion). As a result of

the arrest, Plaintiff was placed in the Itawamba County Jail. (Custody Intake Form, Ex. 18 to

Hallmark depo., Ex. "D" to Motion). Itawamba County retained custody of Plaintiff pursuant to

the Writ to Take Custody issued by the Itawamba County Chancery Court. (Ex. 8 to Kent Guntharp depo., Ex. "B" to Motion).

Itawamba County then took Plaintiff to a mental health doctor pursuant to court order. (Ex. 7 to Kent Guntharp depo., Ex. "B" to Motion). Next, it held Plaintiff at the jail pursuant to court order until the time for his commitment hearing and until a bed opened up at a state mental hospital. (Ex. 8 to Kent Guntharp depo., Ex. "B" to Motion). Finally, Itawamba County released Plaintiff from jail when the Itawamba County Chancery Court issued the Amended Order of Commitment. (Ex. 12 to Kent Guntharp depo., Ex. "B" to Motion).

While Plaintiff's stay at the jail may not have been ideal and while the law allowing mental health patients to be temporarily housed in jail while they await civil commitment may not be perfect, they do not make Itawamba County and its employees liable for Plaintiff's alleged injuries. Plaintiff has simply failed to meet the elements necessary to establish a violation of constitutional or state law.

## LAW AND ARGUMENT

### I. THE CONSTITUTIONAL STANDARDS APPLICABLE TO PRETRIAL DETAINEES APPLY TO PLAINTIFF.

Neither the Fifth Circuit, nor the Mississippi Supreme Court, has carved out a separate legal category for mentally ill individuals being held in jail to await civil commitment. The United States Constitution provides protections for two types of inmates - convicted felons and pretrial detainees. Because Plaintiff was not a convicted felon, the constitutional protections afforded pretrial detainees must have applied to him while he was at the Itawamba County Jail. The fact that he was mentally ill does not alter the analysis. "Since the State restrains the individual's liberty of both mental incompetents and convicted inmates in a like manner, the

State should incur the same duties to provide for the basic human needs of both groups." *Hare v. City of Corinth, Mississippi*, 74 F.3d 633, 648 (5th Cir. 1996).

## II.     SHERIFF CRANE IS THE ONLY OFFICIAL POLICYMAKER FOR ITAWAMBA COUNTY WITH RESPECT TO THE ITAWAMBA COUNTY JAIL.

Defendants previously argued in their original Brief that Plaintiff has failed to establish the elements necessary for municipal liability. None of Plaintiff's claims arose from a policymaker, implementing an official policy, with that policy being the moving force behind the alleged violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Plaintiff's counter argument that Knight is a *de facto* policymaker because Sheriff Crane delegated to him the day-to-day operations of the jail ignores the fact that one of the first things Sheriff Crane did after he was elected was implement an official jail policy. (Crane depo., p.9-10, Ex. "J" to Supplement). Section 007 of the Jail Policies and Procedure Manual specifically deals with mentally ill inmates. It states:

> The detention facility is not intended for long-term housing of mentally ill detainees. They may be held in the detention facility only by court order or until a court hearing can be held when behavior poses a serious threat to the safety of the detainee or others. Mentally ill or emotional inmates will:
>
> > (1)     be separated from other inmates;
> >
> > (2)     be under surveillance by a Detention Officer and visual checks made no less than each hour;
> >
> > (3)     not be abused or discriminated against.

(Jail Policy, Ex. 23 to Hallmark depo., Ex. "K" to Supplement). This is the official jail policy with respect to mentally ill inmates. It was instituted by Itawamba County's policymaker, Sheriff Crane. If Knight, or any other jailer, acted in derogation of this policy, it was an episodic act or omission committed outside the bounds of the policy for which Itawamba County cannot be liable.

592862

3

### III. PLAINTIFF WAS NOT INJURED AS A RESULT OF HIS STAY IN THE ITAWAMBA COUNTY JAIL.

A plaintiff alleging an excessive force violation must show that he has suffered "at least some injury." *Stanley v. City of Baytown, Texas*, 2005 WL 2757370 (S.D. Tex.); citing *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). Although the Fifth Circuit no longer requires "significant injury" for excessive force claims, the plaintiff's injury must be more than "*de minimis*." *Id.*; citing *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). "Certain injuries are so slight that they will never satisfy the injury requirement." *Flores*, 381 F.3d at 397-98.

For example, "handcuffing too tightly, without more, does not amount to excessive force." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). "(A)cute contusions of the wrist" are *de minimis* injuries. *Tarver*, 410 F.3d at 752. And most importantly, taser marks are *de minimis* injuries. *Stanley* at 6. Plaintiff's alleged injury from the stun baton, a dime-sized red mark on the wrist, similar to a taser mark, is also a *de minimis* injury.

Whether it be excessive force or some other constitutional claim, it is important to note that no healthcare provider has ever stated Plaintiff suffered injury from his stay in the Itawamba County Jail. Moreover, no medical records exist showing he or his family ever complained he suffered injury from his jail stay.

Plaintiff never complained to the Region III doctors about being hit with a stun baton despite the incident allegedly occurring directly prior to his evaluation at Region III. Neither Plaintiff, nor his family, complained during his Chancery Court appearance that he had been injured despite the fact that this appearance occurred six days into his jail stay.[1]

---

[1] Plaintiff did speak out during the hearing to tell the Chancellor that doctors at Region III had sexually propositioned him. (Phyllis Guntharp depo., p.60, l.20-25; p.61, l.1-11, Ex. "C" to Motion; Kent Guntharp depo., p.72, l.20-25; p.73, l.1-7, Ex. "B" to Motion).

592862

4

When Plaintiff was dropped off at the VA Hospital following his stay in the jail, neither Plaintiff nor his family complained about any injury he allegedly suffered as a result of his stay there. (Elliot Guntharp depo., p.67, l.11-24, Ex. "A" to Motion). Instead, they mentioned to the VA doctors that the main stressor in Plaintiff's life was his divorce. (Elliot Guntharp depo., p.67, l.25; p.68,, l.1-2, Ex. "A" to Motion; Kent Guntharp depo., p.97, l.7-25; p.98, l.1-12, Ex. "B" to Motion). The VA medical records do not state that Plaintiff suffered any injury from allegedly contacting the stun baton, having water or urine thrown on him by inmates, or any event alleged to have occurred while he was in the jail.

Further, Plaintiff's brother's statement that Plaintiff has not been the same since his stay at the Itawamba County Jail is not enough to establish an injury. *See Stanley*, 2005 WL 2757370 at 6, n.9 (holding wife's statement that Plaintiff's contact with a taser gun may have caused possible long-term medical effects and seizures insufficient to survive summary judgment).

Finally, Plaintiff alleges he contracted crabs in the Itawamba County Jail. He makes this allegation despite the fact he did not complain to any medical providers about any symptoms relating to crabs until four months later, after he had left the VA Hospital and gone back home. Moreover, even if Plaintiff contracted crabs at the jail, such a condition would only be a *de minimis* injury.

IV.    **KNIGHT'S USE OF A STUN BATON TO EXTRACT PLAINTIFF FROM HIS CELL WHEN PLAINTIFF REFUSED TO BE TRANSPORTED FOR HIS MENTAL HEALTH EVALUATION DID NOT VIOLATE HIS CONSTITUTIONAL RIGHTS.**

Plaintiff has failed to provide this Court with any authority for his argument that Knight's use of the stun baton to extract him from his cell was unconstitutional. If anything, the caselaw says the opposite - that prison officials can use stun guns (and other forceful agents) to extract inmates from their cells. *Caldwell v. Moore*, 968 F.2d 595 (6th Cir. 1992); *Dye v. Lomen*, 40

592862

Fed. Appx. 993, 2002 WL 1585903 (7th Cir. 2002). *Soto v. Dickey*, 744 F.2d 1260 (7th Cir. 1984).

Plaintiff's attempt to distinguish this case from *Caldwell* and *Dye* by pointing out that he was allegedly contacted with the stun baton while he was still behind bars fails when viewed in the context of cell extraction cases involving mace, tear gas, and inmates tasered while already in handcuffs. The Seventh, Ninth, and Fifth Circuits, have all found it constitutionally permissible for a prisoner to be maced or tear-gassed while still behind bars in order to get him to submit to being extracted from his cell. *Soto v. Dickey*, 744 F.2d 1260 (7th Cir. 1984) (mace); *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979) (tear gas); *Clemmons v. Greggs*, 509 F.2d 1338, 1340 (5th Cir. 1975) (tear gas). As the Sixth Circuit stated in *Caldwell*, there is no distinction between macing, tear-gassing, or stun-gunning a recalcitrant prisoner, even if he is still behind bars, in order to extract him from his cell. 968 F.2d 595, 600 (6th Cir. 1992).

> The Supreme Court has never held, nor have we or any other Court of Appeals, so far as we can determine, that the use of tear gas or a chemical agent is a per se violation of the Eighth Amendment, **whether an inmate is locked in his cell or not. This observation also holds true for the use of stun guns.**

*Id*. (emphasis added). Moreover, if it is constitutionally permissible to use a stun gun on an inmate already handcuffed, it should be constitutionally permissible to use a stun gun on an inmate behind bars to make him leave his cell to go get medical treatment. *Camp v. Brennan*, 2002 WL 31723093 (3rd Cir. 2002).

If this case is like any, it is like *Caldwell*, 968 F.2d 595 (6th Cir. 1992). In *Caldwell*, the chief jailer kept a stun gun in a desk drawer in his jail office just like Jail Administrator Knight kept the stun baton in his desk drawer. *Id*. at 597. Moreover, like the Itawamba County jailers, none of the jailers in *Caldwell* had any formal training in the use of a stun gun, knew the extent

of its capabilities, received express authorization to use it, or had any training or education in handling inmates with mental illnesses. *Id.*

Further, the plaintiff in *Caldwell* made similar arguments to what Plaintiff is making here - that the officers were not trained or authorized to use the stun gun, the lack of training indicated the use of the stun gun was too dangerous, and that numerous alternatives to using the stun gun were available. *Id.* at 600-01. He similarly argued that the use of force was simply out of proportion to the need for order and that the officers should have talked to him or tried other means short of the stun gun. *Id.*

The Sixth Circuit applied the rule and factors from *Whitley v. Albers*, 475 U.S. 312 (1986), and affirmed summary judgment for the defendants[2]. It then reasoned that Caldwell, like Guntharp, had already demonstrated a propensity for violence by shouting, kicking and threatening. It further reasoned that "the jail has a legitimate interest in having inmates obey orders. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them." *Id.* Caldwell's proposed alternatives involved either allowing the inmates to determine what orders they would obey or forcing jail officials to enter the inmates' cells and physically subdue them and risk injury to themselves and the inmates. *Id.* at 602. "It is not unreasonable for the jail officials to conclude that the use of a stun gun is less dangerous for all involved than a hand-to-hand confrontation." *Id.*

The Court concluded by stating that any expert testimony regarding alternative means for extraction, or simply waiting the prisoner out, flew in the face of "experience and common sense (that) establish ... a prison cannot be operated in such a way." *Id.* at 602; citing *Soto*, 744 F.2d at

---

[2] The core judicial inquiry set out in *Whitley* is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Id.* at 320-22. In making this inquiry, courts should consider the reasons or motivation for the conduct, the type and extent of force applied, and the extent of inflicted injury. *Id.*

1257. Plaintiff's expert has made similar arguments and they are similarly ineffective. Finally, the lack of a policy regulating the use of a stun gun did not render its use unconstitutional. *Id.* at 600. *Caldwell* is on all fours and provides strong persuasive authority for this Court to grant Defendants' summary judgment.

## V.  PLAINTIFF HAS FAILED TO ESTABLISH THAT ITAWAMBA COUNTY, CRANE AND KNIGHT VIOLATED HIS RIGHTS TO FREE ASSOCIATION.

Plaintiff has always alleged he was denied the opportunity to visit with his family at the Itawamba County Jail.  However, in his Reply Brief, Plaintiff made a brand new argument on brand new facts.  He argued that because he was denied visitation, his sister-in-law, Sandra, was unable to present him papers that would have allowed him to waive his commitment hearing and theoretically shorten his stay at the jail.

There are two problems with this argument.  First, no facts support it.  Plaintiff did not state in his Complaint or in his deposition that Sandra ever tried to present him with commitment hearing papers during her attempts to visit him at the jail.  Moreover, this fact was never established through Plaintiff's brother's, mother's, or other sister-in-laws' depositions despite the fact they were supposedly with Sandra when she allegedly tried to visit Plaintiff.  Further, Plaintiff has failed to establish this fact through the deposition testimony of Knight, Graham, or Sheriff Crane, the very people who supposedly denied him visitation.  No record facts exist for this new argument and it is a bare assertion made in an attempt to survive summary judgment.

Second, Plaintiff did not stay at the jail for seven days because he was denied the opportunity to waive his commitment hearing, but rather because he was waiting for a bed to open up in a state mental health facility.  Plaintiff admits this in his Reply Brief by referring to himself as "a person being housed in a jail only because there is no bed in a mental health facility." (Reply Brief, p.34).

## VI.   CRANE AND KNIGHT ARE QUALIFIEDLY IMMUNE FROM PLAINTIFF'S CLAIM.

In his Reply Brief, Plaintiff states that "it is undisputed that each of Plaintiff's claims implicate a constitutional right clearly established as of April 2004."[3]  Nothing could be more disputed.

Plaintiff does not have a clearly established First Amendment right to prison visitation. *Morrow v. Harwell*, 768 F.2d 619, 625 (5th Cir. 1985).  He does not have a clearly established constitutional right for the jailers to have been trained in handling mentally ill inmates. *Caldwell v. Moore*, 968 F.2d 595, 597 (6th Cir. 1992).  He does not have a clearly established constitutional right not to have a stun gun, or some other agent such as mace or tear gas, used to extract him from his cell. *Id*. at 600; *Soto v. Dickey*, 744 F.2d 1260 (7th Cir. 1984); *Clemmons v. Greggs*, 509 F.2d 1338, 1340 (5th Cir.).  "The use of a taser in order to avoid a dangerous situation or the resort to even greater force (does) not violate clearly established law." *Caldwell* at 600.

Defendants do not dispute that Plaintiff has a clearly established right to "basic needs, including medications, sanitation and a reasonably safe environment." Defendants do dispute, however, that Plaintiff has alleged a violation of that clearly established right.  The test for qualified immunity is not just that Plaintiff name a clearly established right, but allege a violation of such a right. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992).

Plaintiff has failed to present any authority establishing that his remaining claims amount to a violation of a clearly established constitutional right.  Specifically, Plaintiff has not cited one case where an inmate's dousing of another inmate with water or urine through cell bars creates

---

[3]  "(1) First Amendment; (2) training and supervision; (3) providing for basic needs, including medications, sanitation and providing a reasonably safe environment; and (4) prohibition of punishment and use of excessive force."

592862

liability for the county and/or its employees. That is because the throwing of water and urine by one inmate onto another does not create liability absent a showing of sufficiently serious risk of harm and deliberate indifference to that risk. *Nettles v. Griffith*, 883 F.Supp. 136, 147 (E.D. Tex. 1995) (water, feces, urine and lighted matches thrown at inmate); *Gardener v. Cato*, 841 F.2d 105, 107 (5th Cir. 1988) (cleaning chemicals thrown in inmate's eye). As discussed above in this Rebuttal Brief and detailed in Defendants' original Brief, Plaintiff has failed to make the requisite showing.

Neither Plaintiff, nor his family, nor Sheriff Crane, nor Plaintiff's expert gets to establish whether a right has been clearly established under constitutional law and whether it has been violated. *Caldwell* at 599; *see also Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992). That determination is left solely to the United States Supreme Court, the Circuit Courts, and the State Supreme Courts. *Caldwell* at 599.

Even if Plaintiff has alleged a violation of a clearly established constitutional right, Crane and Knight remain immune because they acted with objective reasonableness. Officers of reasonable competence could disagree on whether their conduct violated Plaintiff's rights. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because such disagreements could occur, Crane and Knight retain their qualified immunity. *Id*.

Finally, Plaintiff's expert's opinion regarding excessive force and lack of training cannot establish objective unreasonableness. "An expert's after-the-fact opinion that danger was not 'imminent' in no way establishes that there was no danger, or that a conclusion by the officers that it *was* imminent would have been wholly unreasonable." *Whitley v. Albers*, 475 U.S. 312, 323 (1986) (emphasis in original). Consequently, Plaintiff's expert's opinion "falls far short of showing that there was no plausible basis for the official's belief that this degree of force was

necessary." *Id.* In fact, Plaintiff's expert's deposition testimony shows the use of the stun baton was reasonable, partly because Guntharp's flailing around in his cell and kicking and hitting the bars created a danger to himself and Defendants were correct in taking that fact into consideration. (Goldsmith depo., p.18, 49-50, Ex. "L" to Supplement).

## CONCLUSION

Plaintiff's emotionally charged rhetoric and repeated use of the word torture should not cloud the clear cut issues in this case. For the purposes of summary judgment, this Court must determine whether Plaintiff has presented facts to establish constitutional violations under the well-settled standards for municipality liability, deliberate indifference and qualified immunity. Plaintiff has failed to show this Court any cases on point to support his claims.

Conversely, Defendants have provided ample factual and legal support showing that: no official policy was put in place that was the moving force behind Plaintiff's claims; Sheriff Crane and Knight did not act with deliberate indifference towards Plaintiff; they did not violate a clearly established constitutional right; and at all times acted with objective reasonableness.

These reasons, the reasons asserted in Defendants' Motion for Summary Judgment, Supplement, and supporting Brief, and any others this Court deems appropriate compel the entry of summary judgment in favor of Defendants.

This the 15th day of December, 2006.

Respectfully submitted,

s/Christopher J. Latimer (MSB 101549)
Berkley N. Huskison (MSB 9582)
*Attorneys for Itawamba County Sheriff's*
*Department, Itawamba County,*
*Mississippi, Sheriff Phillip Crane, in his*
*Individual Capacity, and Jail Administrator*
*Kenneth Knight, in his Individual Capacity*

592862

11

Of Counsel:

Mitchell, McNutt & Sams
215 Fifth Street North
Post Office Box 1366
Columbus, Mississippi 39701
Telephone: 662.328.2316

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to the following:

Jim Waide, Esquire
Ron L. Woodruff, Esquire
Waide & Associates, P.A.
Post Office Box 1357
Tupelo, MS 38802
jwaide@waidelaw.com
rlw@waidelaw.com

Bo Russell, PLLC
Post Office Box 28
Tupelo, MS 38802
borussellpllc@hotmail.com

This the 15th day of December, 2006.

s/Christopher J. Latimer

592862